Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>v.<br><br>AIMMUNE THERAPEUTICS, INC., BRETT K. HAUMANN, MARK D. MCDADE, STACY D. SELTZER, PATRICK G. ENRIGHT, KATHRYN E. FALBERG, JAYSON D.A. DALLAS, MARK T. IWICKI, and GREG BEHAR,<br><br>Defendants. | Case No._______________<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Aimmune Therapeutics, Inc. ("Aimmune" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Aimmune will be acquired by Nestlé Health Science ("Nestlé Health Science"), a global business unit of Nestlé, S.A. ("Nestlé"), through Nestlé's wholly-owned subsidiaries Sociétés des Produits Nestlé S.A. ("Parent") and SPN MergerSub, Inc. ("Purchaser") (the "Proposed Transaction").

2. On August 31, 2020, Aimmune issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated August 29, 2020 to sell Aimmune to Nestlé Health Science. Under the terms of the Merger Agreement, Nestlé Health Science will acquire all outstanding shares of Aimmune for $34.50 in cash per share of Aimmune common stock (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on September 14, 2020. The Tender Offer is scheduled to expire at 12:00 midnight, Eastern Time, on October 9, 2020. The Proposed Transaction is valued at approximately $2.6 billion.

3. On September 14, 2020, Aimmune filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Aimmune stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Aimmune management's financial projections, relied upon by the Company's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan") and Lazard Frères & Co. LLC ("Lazard") in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and Lazard; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by J.P. Morgan, Lazard and Company insiders. Defendants

authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest Aimmune's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Aimmune is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Aimmune.

9. Defendant Aimmune is a Delaware corporation with its principal executive offices located at 8000 Marina Blvd., Suite 300, Brisbane, California 94005. Aimmune is a biopharmaceutical company developing and commercializing treatments for potentially life-threatening food allergies. Aimmune's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "AIMT."

10. Defendant Brett K. Haumann ("Haumann") has been a director of the Company since October 2018.

11. Defendant Mark D. McDade ("McDade") has served as Chair of the Board and a director of the Company since May 2015.

12. Defendant Stacey D. Seltzer ("Seltzer") has been a director of the Company since January 2015.

13. Defendant Patrick G. Enright ("Enright") has been a director of the Company since April 2013.

14. Defendant Kathryn E. Falberg ("Falberg") has been a director of the Company since May 2015.

15. Defendant Jayson D.A. Dallas ("Dallas") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since June 2018.

16. Defendant Mark T. Iwicki ("Iwicki") has been a director of the Company since May 2015.

17. Defendant Greg Behar ("Behar") has been a director of the Company since November 2016. Defendant Behar currently serves as CEO of Nestlé Health Science.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Nestlé is a Swiss multinational food and drink processing conglomerate corporation headquartered in Vevey, Vaud, Switzerland. It is the largest food company in the world, measured by revenues and other metrics, since 2014. It ranked No. 64 on the Fortune Global 500 in 2017 and No. 33 on the 2016 edition of the Forbes Global 2000 list of largest public companies.

20. Nestlé Health Science, a global business unit of Nestlé, is a globally recognized leader in the field of nutritional science.

21. Parent is a wholly owned subsidiary of Nestlé.

22. Purchaser is a Delaware corporation and wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Company Background

23. Aimmune is a biopharmaceutical company that develops and commercializes treatments for potentially life-threatening food allergies. It is estimated that over 30 million people in the United States and Europe have a food allergy, with peanut allergy being the most prevalent and most commonly associated with severe outcomes and life-threatening events. The Company's main therapeutic approach, which it refers to as Characterized Oral Desensitized Immunology Therapy ("CODIT") is designed to desensitize patients to food allergens and thereby reduce the risk of having an allergic reaction upon accidental exposure or reduce symptom severity should an allergic reaction occur.

24. PALFORZIA (Peanut (Arachis hypogaea) Allergen Powder-dnfp) (formerly AR101) is Aimmune's lead internally developed product utilizing CODIT and was approved by the U.S. Food and Drug Administration ("FDA") for marketing and sale in the United States in January 2020. PALFORZIA is indicated for the mitigation of allergic reactions, including anaphylaxis, that may occur with accidental exposure to peanuts. PALFORZIA is the world's first approved treatment for

use in patients with a confirmed diagnosis of a peanut allergy. Initial dose escalation may be administered to patients aged 4 through 17 years. Up-dosing and maintenance may be continued in patients 4 years of age and older. The Company is currently commercializing PALFORZIA in the United States through a specialty sales force of approximately 80 Practice Account Managers targeting practicing allergists. In addition to the approved indication, the Company is evaluating PALFORZIA for use in young children aged one to less than four years old in a randomized, double-blind, placebo controlled multinational Phase 3 trial called POSEIDON. Completed enrollment of this trial is expected in the second half of 2020. Aimmune also submitted a Marketing Authorization Application for PALFORZIA with the European Medicines Agency ("EMA") in June 2019, which is currently under review with a decision expected in the fourth quarter of 2020.

25. In November 2016, the Company entered into a two-year strategic collaboration with Nestec Ltd., which was subsequently merged with and into Parent, for the advancement of food allergy therapeutics and issued and sold to Nestlé Health Science US Holdings, Inc., a Delaware corporation, 7,552,084 shares in a private placement at a price of $19.20 per share, which represented approximately 15.1% of the Company's outstanding shares at the time of the transaction. In November 2018, the Company entered into an extension of the strategic collaboration on similar terms and issued and sold an additional 3,237,529 of its shares in a private placement at a price of $30.27 per share for aggregate proceeds of $98 million, increasing Nestlé Health Science's ownership of the Company to approximately 19%.

**<u>The Proposed Transaction</u>**

26. On August 31, 2020, Aimmune issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> BRISBANE, Calif.--Aimmune Therapeutics Inc. (Nasdaq: AIMT), a biopharmaceutical company developing and commercializing treatments for potentially life-threatening food allergies, today announced that it has entered into a

definitive agreement for Sociétés des Produits Nestlé, S.A. to acquire Aimmune for $34.50 per share in an all-cash transaction, implying a fully-diluted equity value of $2.6 billion. Sociétés des Produits Nestlé, S.A. is a part of Nestlé Health Science (NHSc) and a wholly owned subsidiary of Nestlé S.A. The agreement was unanimously approved by all of the independent members of the Board of Directors of Aimmune. Greg Behar, CEO of Nestlé Health Sciences and an Aimmune Director, abstained due to his position with Nestlé Health Science.

"The agreement with Nestlé recognizes the value created by years of commitment and dedication to our mission by the team at Aimmune. Delivering PALFORZIA, the world's first treatment for food allergy, is a game-changing proposition in the biopharmaceutical industry and is transformative for the lives of millions of people living with potentially life-threatening peanut allergy," said Jayson Dallas, MD, President and Chief Executive Officer of Aimmune. "This acquisition provides strong value for our shareholders and ensures a level of support for PALFORZIA and our pipeline that will further enhance their potential for patients around the world living with food allergies. Aimmune appreciates the continued strong collaboration with Nestlé Health Science dating back to 2016 through their support as a shareholder and board member, as well as through their consumer/nutrition strength and experience. Their extensive capabilities and global reach, as well as their alignment with our vision of pioneering treatments and solutions for food allergies, are a strong fit for our company."

"This transaction brings together Nestlé's nutritional science leadership with one of the most innovative companies in food allergy treatment," said Nestlé Health Science CEO Greg Behar. "Together, we will be able to create a world leader in food allergy prevention and treatment and offer a wide range of solutions that can transform the lives of people around the world living with food allergies."

The transaction is expected to close in the fourth quarter of 2020, pending the satisfaction of all conditions to the completion of the tender offer. Until that time, Aimmune will continue to operate as a separate and independent company.

Aimmune's financial advisors are J.P. Morgan Securities LLC and Lazard. Latham & Watkins LLP is acting as legal counsel for Aimmune.

**Transaction Details**

Under the terms of the merger agreement, Nestlé S.A.'s wholly-owned subsidiary, Société des Produits Nestlé S.A. (SPN), will commence a cash tender offer to acquire all outstanding shares of Aimmune common stock that are not already owned by NHSc for $34.50 per share in cash, and Aimmune agreed to file a recommendation statement containing the unanimous recommendation of the independent members of the Aimmune board that Aimmune stockholders tender their shares to SPN. Following the completion of the tender offer, Nestlé expects to promptly consummate a merger of Aimmune with a subsidiary of SPN, in which shares of Aimmune that have not been

> tendered in the tender offer will be acquired by SPN and converted into the right to receive the same cash price per share as paid in the tender offer.
>
> The closing of the tender offer is subject to customary closing conditions, including the tender of a majority of outstanding Aimmune shares on a fully diluted basis which shall include the shares of Aimmune common stock currently held by Nestlé and its affiliates and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and antitrust approvals in Germany. The merger agreement includes customary termination provisions for both Aimmune and Nestlé.
>
> **INDICATION**
>
> PALFORZIA is an oral immunotherapy indicated for the mitigation of allergic reactions, including anaphylaxis, that may occur with accidental exposure to peanut. PALFORZIA is approved for use in patients with a confirmed diagnosis of peanut allergy. Initial Dose Escalation may be administered to patients aged 4 through 17 years. Up-Dosing and Maintenance may be continued in patients 4 years of age and older.
>
> PALFORZIA is to be used in conjunction with a peanut-avoidant diet.

**<u>Insiders' Interests in the Proposed Transaction</u>**

28. Aimmune insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Aimmune.

29. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Nestlé. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name of Executive Officer or Director | Number of Shares Beneficially Owned(1) | Implied Cash Consideration for Shares |
|---|---|---|
| Dr. Jayson D.A. Dallas | 28,764 | $ 992,358 |
| Greg Behar | 10,192 | $ 351,624 |
| Patrick G. Enright(2) | 6,183,695 | $ 213,337,478 |
| Kathryn E. Falberg | 135,086 | $ 4,660,467 |
| Brett Haumann | 6,250 | $ 215,625 |
| Mark T. Iwicki | 39,567 | $ 1,365,062 |
| Mark D. McDade | 26,852 | $ 926,394 |
| Stacey D. Seltzer | 10,221 | $ 352,625 |
| Dr. Daniel C. Adelman | 4,952 | $ 170,844 |
| Eric H. Bjerkholt | 20,931 | $ 722,120 |
| Andrew Oxtoby | 4,765 | $ 164,393 |
| Douglas T. Sheehy | 14,982 | $ 516,879 |
| Narinder Singh | 0 | $ 0 |
| All of our current executive officers and non-employee directors as a group (13 persons) | 6,486,257 | $ 223,775,867 |

30. Further, upon consummation of the Proposed Transaction, all vested and unvested Company options and restricted stock units ("RSU") will be converted into the right to receive cash payments, as set forth in the following table:

| Name | Number of Unvested Company Options (#) | Value of Unvested Company Options ($)(1) | Number of Vested Company Options (#) | Value of Vested Company Options ($)(1) | Number of Unvested Company RSUs (#) | Value of Unvested Company RSUs ($)(2) |
|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | |
| Dr. Jayson D.A. Dallas | 466,667 | 3,898,418 | 293,333 | 1,840,382 | 92,550 | 3,192,975 |
| Dr. Daniel C. Adelman | 122,814 | 1,147,490 | 297,186 | 5,165,397 | 24,763 | 854,324 |
| Eric H. Bjerkholt | 164,532 | 1,743,502 | 296,718 | 3,797,123 | 26,325 | 908,213 |
| Andrew Oxtoby | 149,688 | 1,769,633 | 67,812 | 835,942 | 22,670 | 782,115 |
| Douglas T. Sheehy | 145,313 | 1,316,077 | 192,936 | 2,397,489 | 39,295 | 1,355,678 |
| Narinder Singh | 150,000 | 2,571,000 | — | — | 4,285 | 147,833 |
| *Directors* | | | | | | |
| Greg Behar | 15,398 | 267,771 | 75,942 | 843,228 | 7,840 | 270,480 |
| Patrick G. Enright | 15,398 | 267,771 | 174,457 | 4,582,495 | 7,840 | 270,480 |
| Kathryn E. Falberg | 15,398 | 267,771 | 56,187 | 841,253 | 7,840 | 270,480 |
| Brett Haumann | 23,332 | 405,743 | 2,121 | 36,884 | 13,313 | 459,299 |
| Mark T. Iwicki | 15,398 | 267,771 | 195,976 | 4,956,274 | 7,840 | 270,480 |
| Mark D. McDade | 15,398 | 267,771 | 161,029 | 4,141,469 | 7,840 | 270,480 |
| Stacey D. Seltzer | 15,398 | 267,771 | 108,608 | 2,320,206 | 7,840 | 270,480 |

31. In addition, if they are terminated in connection with the Proposed Transaction, Aimmune's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Dr. Jayson D.A. Dallas | $1,800,000 | 7,091,393 | $ 56,244 | $8,947,637 |
| Dr. Daniel C. Adelman | $ 785,696 | 2,001,814 | $ 23,559 | $2,811,069 |
| Eric H. Bjerkholt | $ 773,312 | 2,651,715 | $ 39,192 | $3,464,219 |
| Andrew Oxtoby | $ 751,296 | 2,551,748 | $ 31,410 | $3,334,454 |
| Douglas T. Sheehy | $ 728,248 | 2,671,755 | $ 37,496 | $3,437,499 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

27. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Aimmune's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

28. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Aimmune management's financial projections, relied upon by the Company's financial advisors J.P. Morgan and Lazard in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and Lazard; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by J.P. Morgan, Lazard and Company insiders.

***Material Omissions Concerning Aimmune's Financial Projections***

29. The Recommendation Statement omits material information regarding the Company's financial projections provided by Aimmune's management and relied upon by J.P. Morgan and Lazard for their financial analyses.

30. For example, the Recommendation Statement sets forth:

> In connection with the Independent Directors' consideration of the Offer and Merger, the Company's management prepared probability-adjusted profit and loss projections regarding the Company on a standalone basis for fiscal years 2020 through calendar year 2035 (the "**Company Management Projections**"), as summarized in the table below. The Company Management Projections were presented to the Independent

> Directors during the meeting of the Independent Directors on August 27, 2020, and to J.P. Morgan and Lazard in connection with their respective opinions to the Independent Directors and related financial analyses. Company management made various assumptions when preparing the unaudited Company Management Projections. These assumptions included the risks and probability of success of the Company's product candidates, timing for clinical trial completion and commercial launch, along with estimated operational costs, including sales & marketing, research & development, manufacturing, and general & administrative, and other market and financial conditions and other future events[.]

Recommendation Statement at 45-46 (emphasis in original). The Recommendation Statement, however, fails to disclose Company management's non-probability adjusted projections and the assumptions underlying the probability adjusted profit and loss projections so Aimmune stockholders can evaluate the financial impact the Company's probability adjustments had on the projections.

31. The Recommendation Statement further fails to disclose the probability-adjusted product level projections for Aimmune relied upon by J.P. Morgan and Lazard for the respective sum-of-the-parts discounted cash flow analyses.

32. In addition, with respect to the Company's probability-adjusted profit and loss projections, the Recommendation Statement fails to disclose the terminal year projections as well as the line items underlying unlevered free cash flow, including taxes, expected working capital requirements, depreciation, amortization and capital expenditures.

33. The omission of this information renders the statements in the "Company Management's Unaudited Prospective Financial Information" and "Opinions of the Company's Financial Advisors" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's and Lazard's Financial Analyses***

34. The Recommendation Statement describes J.P. Morgan's and Lazard's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of J.P. Morgan's and Lazard's fairness opinions and analyses fails to include key inputs

and assumptions underlying these analyses. Without this information, as described below, Aimmune's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Lazard's fairness opinions in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

35. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the range of illustrative terminal values for the Company; (ii) quantification of the inputs and assumptions underlying the discount rate range of 10.0% to 14.0%; (iii) net cash; and (iv) the fully-diluted outstanding shares.

36. In addition, the Recommendation Statement completely omitsa fair summary of J.P. Morgan's summary of broker outlook analysis, illustrative sum-of-the-parts analysis and select recent biopharma M&A premia analysis, each of which were presented to the independent members of the Board at its August 28, 2020 Board meeting.

37. With respect to Lazard's *Select Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed.

38. With respect to Lazard's *Premia Paid Analysis*, the Recommendation Statement fails to disclose the individual premiums paid for each of the transactions observed.

39. With respect to Lazard's *Research Analyst Price Target* analysis, the Recommendation Statement fails to disclose the individual price targets observed and the sources thereof.

40. In addition, the Recommendation Statement wholly fails to disclose a fair summary of Lazard's Probability-Adjusted Sum-Of-The-Parts DCF and its Probability Adjusted DCF Sensitivity Analysis broken down on the product level, each of which were presented to the independent members of the Board at its August 28, 2020 Board meeting.

41. The omission of this information renders the statements in the "Company Management's Unaudited Prospective Financial Information" and "Opinions of the Company's Financial Advisors" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

42. The Recommendation Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

43. For example, the Recommendation Statement sets forth that, "In the second quarter of 2020, representatives of Lazard Frères & Co. LLC ("Lazard"), along with members of Aimmune's management, conducted outreach to potential partners (including Nestlé) for licensing and other strategic transactions relating to the rights to commercialize Aimmune's lead product, PALFORZIA®, in Europe." *Id.* at 17. The Recommendation Statement fails to disclose whether the Company entered into confidentiality agreements with any parties in connection with this outreach and if so, whether any confidentiality agreements include a "don't-ask, don't-waive" ("DADW") standstill provision presently precluding any parties from submitting a topping bid for the Company.

44. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if such action has been done, is omitted from the Recommendation Statement.

45. Any reasonable Aimmune stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter

the total mix of information.

46. The omission of this information renders the statements in the "Background and Reasons for the Company Board's Recommendation" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's, Lazard's and Company Insiders' Potential Conflicts of Interest***

47. The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisors, J.P. Morgan and Lazard.

48. The Recommendation Statement sets forth:

> During the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates have had commercial or investment banking relationships with certain affiliates of Parent, including Nestlé S.A. ("NSA"), for which J.P. Morgan and its affiliates have received customary compensation. Such services during such period have included acting as joint lead arranger and bookrunner on NSA's revolving credit facilities in August 2018 and October 2019, joint lead bookrunner on a Parent affiliate's offering of debt securities in September 2018 and financial advisor to NSA on the sale of its gastrointestinal disease diagnostics unit, Prometheus Laboratories, in July 2019. In addition, J.P. Morgan and its affiliates hold, on a proprietary basis, less than 1% of the outstanding common stock of each of the Company and NSA. During the two year period preceding delivery of its opinion ending on July 31, 2020, the aggregate fees received by J.P. Morgan from Parent's affiliates were approximately $18.6 million.

*Id.* at 37-38. The Recommendation Statement fails, however, to disclose whether J.P. Morgan has performed any services for Aimmune in the two years preceding the date of its fairness opinion, and, if so, the nature of the services provided and the amount of compensation received in connection with such services.

49. Similarly, the Recommendation Statement states:

> Lazard has in the two years prior to the delivery of its opinion on August 28, 2020 provided certain investment banking services to L'Oréal S.A. or its subsidiaries, which are affiliates of Parent, for which Lazard has received and may receive compensation. Lazard, as part of its investment banking business, is continually engaged in the valuation of businesses and their securities in connection with mergers and acquisitions, negotiated underwritings, secondary distributions of listed and unlisted

> securities, private placements, leveraged buyouts, and valuations for estate, corporate and other purposes.

*Id.* at 44. The Recommendation Statement, however, fails to disclose the amount of compensation received in connection with the services Lazard provided to L'Oréal S.A. The Recommendation Statement further fails to disclose whether Lazard has performed any services for Aimmune in the two years preceding the date of its fairness opinion, and, if so, the nature of the services provided and the amount of compensation received in connection with such services.

50. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

51. The omission of this information renders the statements in the "Opinions of the Company's Financial Advisors" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

52. The Recommendation Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

53. The Recommendation Statement sets forth:

> As of September 10, 2020, none of the Company's executive officers or non-employee directors has entered into any agreement, arrangement or understanding with Parent or any of its executive officers, directors or affiliates regarding employment with Parent or any of their affiliates. However, their existing employment agreements will remain in place after the Merger. Although no such agreement, arrangement or understanding exists as of September 10, 2020, certain of the Company's executive officers or non-employee directors may, prior to the completion of the Merger, enter into new arrangements with Parent or its affiliates regarding employment with Parent or certain of its affiliates.

*Id.* at 13. Yet, the Recommendation Statement fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Nestlé and Aimmune executive officers and directors, including who participated in all such communications, when they occurred

and their content. The Recommendation Statement further fails to disclose whether any of Nestlé's proposals or indications of interest mentioned management retention as well as the effect of the Company's directors and executive officers' existing employment agreements remaining in place after the merger.

54. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Aimmune's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this information renders the statements in the "Arrangements with Current Executive Officers and Directors of the Company" and "Background of the Offer" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

56. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Aimmune stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

59. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

60. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT II

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

61. Plaintiff repeats all previous allegations as if set forth in full.

62. The Individual Defendants acted as controlling persons of Aimmune within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Aimmune and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

65. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

66. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Aimmune, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 25, 2020

**WEISSLAW LLP**

By: /s/ *Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*